## LIBBY and others v. CROSSLEY and others.

*(Circuit Court, D. Massachusetts. July 29, 1887.)*

FRAUDULENT CONVEYANCES—INDEBTEDNESS—GARNISHMENT.

A debtor assigned to his four brothers, to whom it was claimed he owed about $57,700, an unsettled claim for fire insurance money, for an expressed consideration of $60,000, the difference between the two amounts being made up by cash contributed in varying sums by the several brothers. The brothers, who were all under 40 years of age, were mechanics, working for wages which were large, but hardly sufficient to enable them to maintain themselves, and to accumulate so much money. Afterwards the claim against the insurance companies was fixed by settlement at $57,500. *Held*, in a controversy between the brothers and an attaching creditor, whose claim was due when the assignment was made, that, although the testimony was open to suspicion, yet, being uncontradicted, the *bona fides* of the transaction was established, and that the assignees should take the fund.

At Law.

*Jas. McKeen* and *Oliver C. Stevens*, for plaintiff.

*Thomas Hillis* and *John Hillis*, for claimants.

CARPENTER, J. This action was brought by attachment of the funds of the defendant Crossley in the possession of certain insurance companies, who have answered, disclosing funds which have since, by settlement, been ascertained to amount to $57,500, and also disclosing the fact that they have been notified of an assignment of the funds. The assignees were then cited in, and the case has now been heard on the question of charging the trustees.

The writ in this case was served by attachment, April 2, 1886. The assignment was made January 8, 1885, and, for a consideration of $60,-000, purports to assign all sums of money due from the companies who are served as trustees in this action. The assignees, who here appear as claimants, are brothers of the defendant. It appears by the testimony that, on the day the assignment was made, the defendant was indebted to his brothers for various advances of money theretofore made, and for interest thereon, amounting in the whole to $57,772.77; and that on that day they paid him in cash, in various sums contributed by each of them, an amount sufficient to bring the sum up to $60,000, and took from him the assignment. The plaintiffs contend that this assignment is void, because it was made to hinder, delay, and defraud creditors.

At the time of the assignment, as is ascertained by the judgment in this case, the defendant was indebted to the plaintiffs for a sum above $12,000. This claim appears to have been in dispute, but, for the purpose of this discussion, I think it must be assumed that there was a valid debt. On the other hand, he was indebted to his brothers in a sum above $50,000, besides interest. Under these circumstances, I am not prepared to say that the transaction was other than a preference of one creditor over another, and therefore not within the statute of Elizabeth against fraudulent conveyances. I have therefore reached the conclusion

that the claimants are entitled to this fund. I base this conclusion on a finding, as stated above, of the facts as to the doings and intentions of the parties preceding and attending the execution of the assignment.

This finding is in accordance with the testimony of the claimants, but I have had much difficulty in coming to the conclusion that a judgment ought to be based on their testimony. Three of the claimants have worked as foremen or superintendents in the business of dyeing. One is in imperfect health, and has apparently worked as a journeyman at the same trade. None of them had reached 40 years of age at the time of the assignment. It seems improbable that they should have accumulated so large a sum of money in the time here stated, besides paying their expenses of living, and accumulating, as I understand some of them to say, other property. But it is to be observed that three of them have received large pay, and, for all that appears, may have lived at very small expense. The statement of the sum said to have been loaned by Isaac Crossley Jr., seems especially open to suspicion, since his health appears to have been such that he has not thought it prudent to take the care of his own money, but has depended on one of his brothers to render that service for him. But their testimony is not contradicted, and I am not prepared to say it is not true.

It seems, also, an unusual contract to pay so large a sum as is here named for a claim for insurance which was then disputed and was in litigation. But it appears that the claimants were assured by counsel that the validity of the claim would undoubtedly be established by the courts. They might therefore, perhaps, proceed under the supposition that the only risk in the matter related to the amount to be recovered. Considering that they had a large sum at stake, and that the purchase offered the only present chance of obtaining payment, I cannot say it is impossible that they should agree to take the chances as to the amount of the fund which they should receive.

An order will be made that the trustees be discharged.